I dissent. The majority opinion refers to the settled rule of law in Alabama that:
 "[M]unicipal ordinances are presumed to be valid and reasonable, to be within the scope of the powers granted municipalities to adopt such ordinances, and are not to be struck down unless they are clearly arbitrary and unreasonable. City of Mobile v. La Clede Hotel Co., 221 Ala. 531, 129 So. 477."
Cudd v. City of Homewood, 284 Ala. 268, 270, 224 So.2d 625
(1969). The majority also quotes Clements v. Commission of Cityof Birmingham, 215 Ala. 59, 61, 109 So. 158 (1926), when it says that bad faith must be apparent upon the face of the act. I am in complete agreement with these principles of law. However, I disagree with the majority's reliance on Miller v.State, 249 Ala. 14, 29 So.2d 411 (1947), as dispositive in this appeal. The ordinance in this case differs in two ways from the ordinance in Miller, in which the bad faith was apparent on the face of the act.
First, a civil service position was not destroyed in the present case. Rather, a job assignment was changed. Appellants remained in the civil service as firefighters with the Tuscaloosa Fire Department. Hourly non-civil service personnel were then hired to man the Air Crash Station. Appellants admitted that they viewed their positions at the Air Crash Station as job assignments and not civil service offices. Appellee was correct in its distinction between the two when it argued in brief:
 "A Civil Service `office' is a position created by the Civil Service Board to which employees are assigned who meet the criteria. A `job assignment' is a task which an employee's superior may administratively designate him to perform."
The majority relies upon City of Wichita Falls v. Harris,532 S.W.2d 653 (Tex.Civ.App. 1975), and City of San Antonio v.Wallace, 161 Tex. 41, 338 S.W.2d 153 (1960), in addition toMiller, to hold the ordinance invalid; however, those cases, like Miller, involved the abolition of a job, with which we are not faced, and are, therefore, not analogous to the present case. Second, the ordinance before us was preceded by a feasibility study which the ordinance recognized in its preamble. The study projected annual savings amounting to $75,238.28. The actual savings in the first year under the ordinance were about $74,000.00.
By quoting the public policy represented by the civil service law enunciated in Act No. 249 (1947), the majority addresses the issue of whether the city can justify hiring an employee who is not to be subject to civil service. It is clear from Section 2 of the act that "`employee' means any person who is employed in the service of the city on a regular monthly salary." This explicitly allows hourly personnel to remain outside civil service by including only monthly salaried employees under the civil service law. Obviously, a civil service position could not be abolished and then replaced by an identical non-civil service position, but, as already discussed, that did not occur in this case.
The trial court had Ordinance No. 2129 before it and heard evidence and testimony presented during the trial. Its conclusion that the ordinance was not invalid, either through bad faith, an abuse of discretion, or having been adopted arbitrarily or capriciously, should be sustained. *Page 1251