At issue on this appeal is the validity of a zoning change allowed by the City of Mobile and its planning commission. We affirm the trial court's rulings that the City's decision was not arbitrary and capricious and that there was no statutory violation in the membership of the city planning commission.
In January 1979 the owners of a nursing home applied for rezoning of property they had acquired for expansion. The Mobile city planning commission heard their application and objections from local residents. The planning commission voted to recommend approval of the rezoning to the city commission, which granted the rezoning application after hearing the parties.
The local residents then filed the present action against the City and the nursing home owners. The plaintiffs sought a declaration (1) that the zoning ordinance was arbitrary and capricious and (2) that the composition of the city planning commission violated Code 1975, § 11-52-3. (A claim that §11-52-3 was unconstitutional was dropped at a pretrial conference.) The trial court in a careful, detailed opinion denied the requested relief.
 I. WAS § 11-52-3 VIOLATED?
Mobile's nine-person planning commission includes all three members of the city board of commissioners. Thus, the planning commission presented its recommendation to a body — the city commission — whose members had already voted on the issue in their capacity as planning commission members.
The appellants argue that the action taken by the City was void because the makeup of the planning commission violated Code 1975, § 11-52-3 (a), which provides in part:
 "(a) The [municipal planning] commission shall consist of nine members: the mayor, one of the administrative officials of the municipality selected by the mayor, a member of the council to be selected by it as a member ex officio and six persons who shall be appointed by the mayor. . . ." (Emphasis added.)
The term "mayor" is defined in Code 1975, § 11-52-1 (2) as the "chief executive of the municipality." The term "council" is defined in § 11-52-1 (3) as the "chief legislative body of the municipality." The term "administrative officials" is undefined. *Page 580 
The appellants contend that "§ 11-52-3 (a) limits the ex officio membership on the planning commission to one city commissioner." They believe that the present arrangement reduces the planning commission to a "rubber stamp for the city commissioners . . . since three members of the planning commission have ultimate power over zoning ordinances." Id. The appellants also emphasize that there has been no selection process as contemplated by the statute because the city commissioners' testimony indicates that they assumed they were automatically members of the planning commission. To the appellants a lack of a selection process results in a violation of § 11-52-3 (c), which provides:
 "(c) The terms of ex officio members [of the planning commission] shall correspond to their respective official tenures, except that the term of the administrative official selected by the mayor shall terminate with the term of the mayor selecting him."
They argue that the city should undergo the required selection process on each occasion when the office of mayor is transferred.
The apparent purpose of § 11-52-3 (a) is to include on the planning commission representatives of different branches of city government; the mayor or chief executive, a city administrative official, and a member of the chief legislative body. We do not believe that this purpose has been frustrated by what the city has done.
Under the commission form of government that Mobile has adopted, the president of the board of commissioners is "invested with all the powers, jurisdiction and functions possessed by the mayor," Code 1975, § 11-44-14. Thus, for that member of the board of commissioners to also serve on the planning commission is consistent with and in fact required by § 11-52-3 (a), which designates the mayor as a member. Similarly, § 11-52-3 (a) requires a second city commissioner to serve on the planning commission because the "council" here is the city commission which functions as the "chief legislative body of the municipality," Code 1975, § 11-52-1 (3).
The question thus becomes whether the third city commissioner can be considered "one of the administrative officials of the municipality" within the meaning of § 11-52-3 (a). The trial court found that "the evidence demonstrated that the commissioners are such administrative officials." The appellants concede this point apparently as a matter of law when they state:
 "Under the commission form of government (set out in Chapter 44 of Title 11 of the Alabama Code) the commissioners can be counted among the administrative officials in Mobile."
Their concession finds specific support in Code 1975, §11-44-9, which assigns each member of the board of commissioners direction of one of the three specified departments of city government. See also Code 1975, § 11-44-23
and § 11-44-30. Clearly then, to have all three city commissioners sitting on the planning commission does not violate the statutory purpose of representing the different branches of city government on the planning commission.
 II. APPROVAL OF THE REZONING APPLICATION
The trial court recognized, and the appellants do not dispute, that judicial review of zoning ordinances or amendments is limited. Because zoning ordinances are legislative acts, they are presumed valid unless shown to be arbitrary and capricious. Cudd v. City of Homewood, 284 Ala. 268,270, 224 So.2d 625 (1969); Marshall v. City of Mobile,250 Ala. 646, 649, 35 So.2d 553 (1948). A zoning ordinance cannot be considered arbitrary and capricious if its adoption "raises questions upon which reasonable differences may exist in view of all the circumstances and the wisdom of the ordinance is fairly debatable." Waters v. City of Birmingham, 282 Ala. 104,108, 209 So.2d 388, 391 (1968). After summarizing this standard of review, the trial court wrote:
 "In the case at bar, the court not only finds as fact that the decision to rezone was fairly debatable; the court finds as *Page 581 
fact that the decision was fairly debated."
(Emphasis in original.)
The court went on to note the following. The appellants spoke and were ably represented at three hearings, the transcripts of which "demonstrated much more than mere cursory attention to the complaints voiced." The major concern was the anticipated worsening of a drainage problem in the area, but a special study revealed that the proposed expansion of the nursing home in the manner allowed by the city would not significantly affect the drainage problem. Finally, the trial court noted trial testimony and exhibits showing other businesses in what the appellants contended was a residential area.
Although the trial court took testimony ore tenus from eight witnesses, the appellants argue that the ore tenus rule does not apply to our review of the trial court's decision, because the trial court considered records of the hearing before the city commissioners in addition to the evidence of the witnesses before the court.
We disagree. The trial court considered the transcripts of the hearing before the commissioners in light of the testimony of the eight witnesses, who included area residents, the former city planning director, the zoning administrator, the city engineer, the vice president of the nursing home, and one of the city commissioners. Their testimony could have been important in evaluating the documentary evidence contained in the documents. Accordingly, the ore tenus presumption of correctness must apply. See Lott v. Keith, 286 Ala. 431, 433,241 So.2d 104 (1970); and Alabama Rules of Civil Procedure, Rule 52, Committee Comments (presumption of correctness attaches when evidence is partially oral).
On the merits the appellants do not directly dispute any of the trial court's specific findings on the factors that made the City's decision a fairly debatable one. Instead, the appellants emphasize the commissioners' language at a hearing to the effect that they were "not a court," would not hear "all this legal stuff," and would allow the rezoning in order to "move the case off dead center," knowing that the appellants would take an appeal to court. Viewed in isolation this language might suggest an arbitrary and capricious exercise of discretion on the part of the commissioners; however, the context makes clear that "this legal stuff" refers to evidence that the nursing home operated in the past without a license. The commissioners stated that this evidence was irrelevant to their zoning decision and would have to be dealt with by a court. It is not clear from the entire record that the commissioners were rejecting consideration of the factors legally relevant to the merits of the zoning decision. Therefore, we have no reason to doubt the trial court's conclusion that the commissioners' zoning decision was fairly debated.
The appellants cite other indications that the city commissioners were hostile and had prejudged the issues, but they do not question the trial court's specific factual findings described above. These findings were sufficient to show that reasonable differences could have existed on the merits of the ordinance. Accordingly we have no occasion to reverse.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.