CRAWLEY, Judge.
Providence Park, Inc., is a corporation that owns the land upon which Providence Hospital is located; it also owns acreage surrounding the hospital, a total of approximately 265 acres. When Providence Park purchased it, the entire acreage was zoned B-3, a classification allowing heavy commercial uses such as automobile sales lots and nightclubs. When Providence Park first built Providence Hospital at its present location, off Airport Boulevard in Mobile, it developed a master plan for the development of the area. In 1991, Providence Park subdivided 45 acres of land and had it rezoned from B-3 to R-l, which is a single-family residential zone. It sold that land to Providence Estates, Inc., which developed a subdivision on the land. The subdivision contains homes valued between $200,000 and $500,000. When the *771 subdivision lots were sold, the deeds contained restrictive covenants requiring that the landowners construct fences along the portion of their land abutting Providence Park’s land.[1] In addition, Providence Park agreed to restrict the height of the buildings built within 250 feet of the Providence Estate property to two stories.
In March 2000, Providence Park applied to the Mobile City Planning Commission for a two-lot commercial subdivision of land abutting Providence Estates. The land, zoned B-3, was to be divided into two parcels, one which was to be developed as the site for a dentist’s office, which is actually a B-l, or light commercial, use. Providence Park had no plans, as of March 2000, for the other parcel. The original plans called for a 10-foot buffer zone, an undeveloped area left in its natural state, between the boundary of the Providence Estates subdivision and the utilization of the commercial property, for a parking lot or a landscaping area. Although the staff of the Planning Commission indicated approval of the plans, the Planning Commission itself, after a public hearing, approved the subdivision but with the requirement that the buffer zone be increased to 20 feet. Providence Park resubmitted its plans, again indicating the inclusion of only a 10-foot buffer zone, and, again, the Planning Commission approved the subdivision provided the buffer zone was increased to 20 feet.
Providence Park then petitioned the Mobile Circuit Court for a writ of mandamus directing the Planning Commission to approve the subdivision with only a 10-foot buffer zone. It argued that the Planning Commission’s requirement that the subdivision include a 20-foot buffer zone was arbitrary and capricious and exceeded its authority under the Subdivision Regulations of the City. After conducting a bench trial, the court denied the mandamus petition. Providence Park appeals.
The City Subdivision Regulation in question states:
“Buffer Planning Strips or Privacy Fence. Where a residential subdivision adjoins land zoned for or used for a railroad right-of-way, an industrial area, a commercial area, or other land use which would have a depreciating effect on the residential use of the land, a buffer planting strip or a wooden privacy fence of 6 feet in height may be required by the Planning Commission.”
A portion of the City’s Zoning Ordinances relating to buffers is also included in the record. It reads:
“1. PROTECTION BUFFER. Except as otherwise provided hereinafter, wherever the boundary of a building site in a B-l, B-2, B-3, B-4, I — 1, or 1-2 District adjoins an R-l, R-2, or R-3 District, there shall be provided on such building site a protection buffer strip not less than ten (10) feet in width.... The protection buffer provided may be a wall, fence, or screen planting that complies with the following regulations:
“(a) Wall or Fence. If a wall or fence is provided as a protection buffer, it shall be six (6) feet height, of a construction and a design approved by the Land Use/Code Administration Department.
“(b) Screen Planting. If screen planting is provided as a protection buffer, it shall be at least ten (10) feet in width, shall be planted with materials in sufficient density and of sufficient height (but in no case less than six (6) *772 feet high at the time of planting) to afford protection to the residence district from the glare of lights, from blowing papers, dust and debris, from visual encroachment, and to effectively reduce the transmission of noise.”
The parties dispute whether this is a zoning case or a subdivision case. Under the caselaw dealing with actions like this one, it is clear that this case is not a zoning case; in such a case we would be concerned with the city’s legislative action in enacting a particular ordinance. Ryan v. City of Bay Minette, 667 So.2d 41, 43-44 (Ala.1995). Instead, this case involves the city’s administrative decision to approve or disapprove a particular land use under its zoning ordinances. Ryan, 667 So.2d at 44. The Planning Commission has no discretion but to approve a subdivision plan that conforms to those ordinances, see Smith v. City of Mobile, 374 So.2d 305, 307 (Ala.1979) (quoting E.C. Yokely, The Law of Subdivisions § 52 (1963 and Supp.1979)), and a mandamus action is available to compel such approval when it is denied for reasons unrelated to conformance with those ordinances. Smith, 374 So.2d at 308 (quoting E.C. Yokely, supra, The Law of Subdivisions § 53). “Mandamus is also appropriate where all applicable ordinances have been complied with, and the proposal is denied because adjacent property owners object.” Smith, 374 So.2d at 308.
Our supreme court has stated that planning commission regulations must “set forth sufficient standards to give applicants notice of what is required of them.” Smith, 374 So.2d at 308 (citing Powell, Law of Real Property, Chapter 79, “Subdivision Control,” 866). A planning commission is bound by its regulations, and those regulations, because they impose restrictions on the use of private property, are strictly construed. Id. at 307 (citations omitted). In addition, the regulations “ ‘must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities.’ ” Id. (quoting Longshore v. City of Montgomery, 22 Ala.App. 620, 622, 119 So. 599, 600 (1928)).
After reviewing the City’s subdivision regulation in question, we conclude that the Planning Commission is clearly given the power to discriminate between property owners by determining, for example, the width of the buffer required. Providence Park was aware that a buffer might be required, and it in fact included a 10-foot buffer in its subdivision plans; however, it was not aware, and could not have known, what particular concerns might influence the Planning Commission to increase the buffer from 10 feet to 20 feet. Although we cannot disagree with the Planning Commission’s opinion that land uses permitted in a B-3 zone, such as automobile lots and nightclubs, might create light and noise “pollution” that would likely affect the residences in Providence Estates, the fact that the inartfully drawn regulation permits the totally discretionary determination of the size of the buffer needed in a particular location, unguided by any objective, clearly stated criteria, compels the conclusion that it fails to “set forth sufficient standards to give applicants notice of what is required of them.” See Smith v. City of Mobile, 374 So.2d at 308.
Accordingly, we conclude that the Planning Commission’s imposition of the additional 10 feet of buffer space was arbitrary and capricious and exceeded its power and that the trial court should have granted Providence Park’s petition for the writ of mandamus. The judgment of the trial court is reversed and the cause is remand *773 ed for entry of a judgment in accordance with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., dissents.

. The restrictive covenants require that the fences be uniform in height, that they be constructed of the same materials, and that they join. The testimony at the hearing indicated that the fences in existence were seven feet high.