STEAGALL, Justice.
The appellants are owners of cemetery lots within sector “A” of Valley Hill Memorial Gardens cemetery (hereinafter “Valley Hill cemetery”) in Pell City. The appellants named the following as defendants: (1) Valley Hill Memorial Gardens, Inc., the owner of Valley Hill cemetery; (2) the city of Pell City; (3) the mayor and councilmen of Pell City; and (4) Gerald and Dorothy Ensley, the owners of a tract of land lying south of and contiguous to Valley Hill cemetery.. Appellants claim that the property held by the Ensleys was dedicated as a cemetery prior to the Ensleys’ purchase of the property in 1982. The trial court held that the Ensley tract was never dedicated as a cemetery, but the court granted all Valley Hill cemetery lot holders a 20-foot easement for ingress and egress and turnaround purposes across the northern side of the Ensley tract. We affirm.
Valley Hill Memorial Gardens, Inc. (the cemetery corporation), is a private corporation which was organized for profit in the year 1970. The purposes of the corporation included not only owning, operating, and maintaining a cemetery, but also, within a broad business authority, transacting any other kind of business.
At the time of the filing of the complaint and at the time of trial, the sole stockholder and president of the cemetery corporation was Margaret M. Nixon. The original incorporators of the cemetery corporation acquired title in 1970 to a tract of land consisting of slightly over 25 acres in Pell City, Alabama. A complete chain of title was introduced into evidence showing numerous transactions that occurred following the original purchase by the cemetery corporation.
Shortly following the acquisition of the tract by the corporation, a portion of the tract was developed as a cemetery. In 1970, the original cemetery management employed an engineer, Harold E. Smithson, who laid out a portion of the tract known as sector “A.” All of the original incorpo-rators executed a map known as sector “A,” thereby dedicating the sector as a cemetery. The map contained approximately 2400 grave lots and consisted of approximately 2.8 acres of the 25-acre tract acquired originally.
The undisputed testimony was that from the year 1970 to the date of trial, some 15 years later, approximately 500 cemetery lots or grave sites in sector “A” had been sold to various members of the public and that numerous interments had occurred in sector “A.” It was also undisputed that there had been no interments whatsoever in any portion of the original 25-acre tract other than sector “A.” A perpetual care fund had been established by the cemetery corporation as a result of the lot sales in sector “A” and the corporation had maintained sector “A” as a cemetery. An access road was developed along the south side of sector “A,” extending from U.S. Highway 231 in an easterly direction to an older cemetery located on the east side of the original 25-acre tract.
Appellants contend that the access road as presently existing is insufficient to afford a reasonable access to sector “A” because vehicular traffic cannot turn around without traversing on portions of the original 25-acre tract lying south of sector “A,” which is where the Ensley tract is located. Appellants contend that portions of the tract acquired by the Ensleys constitute dedicated portions of Valley Hill cemetery known as sectors “B” and “C.”
In 1978, the cemetery corporation employed a surveyor, Darrell Luker, to make a preliminary layout of an additional tract of land lying south of sector “A,” which is the area appellants call sectors “B” and “C.” Luker marked off and staked additional lots in sectors “B” and “C.” The map prepared by Luker was never executed by anyone associated with the cemetery corporation, as was done with the map of sector “A.” There was no evidence that anyone other than Luker had a copy of the map. The testimony is in dispute as to whether any member of the public bought a lot in sector “A” in reliance upon the map prepared by Luker. There was no testimony that a conveyance was ever made of a *88 cemetery lot outside sector “A.” There was testimony that contracts to purchase purported lots in sectors “B” and “C” had been executed by at least two purchasers, but that prior to paying the full purchase price and receiving deeds, they accepted cemetery lots in sector “A” in exchange. It appears from the evidence that no cemetery deeds were ever executed in regard to any portion of the property other than sector “A.”
There was considerable evidence that around the same time the cemetery corporation had preliminary layouts of sectors “B” and “C” prepared, it proceeded to sell portions of the original 25-acre tract for commercial purposes. In fact, portions of the original 25-acre tract of land had been sold, as indicated by the chain of title introduced into evidence, with at least two commercial buildings being located on the property at the time of the trial. In March 1978, the cemetery corporation conveyed a 10-acre tract of land to Everett Nixon. Thereafter, Nixon conveyed the same 10 acres to Margaret M.- Nixon. Margaret Nixon conveyed a portion of this 10 acres to Dr. Larkin P. DeShazer on January 2, 1979, and another portion to The Peoples Bank on February 7, 1980. A commercial building has been constructed on the De-Shazer tract. On September 17, 1981, the cemetery corporation conveyed another portion of the original 25-acre tract to Margaret Nixon. She reconveyed this tract to Dennis Abbott on the same date. A commercial building has also been constructed on this tract. On September 30, 1982, the cemetery corporation conveyed the last parcel of the original 25-acre tract (except the cemetery in sector “A”) to Margaret Nixon. This tract was purchased by the appellees, Gerald and Dorothy Ensley, on September 30, 1982, and is the subject of this dispute. Prior to the sale of the Ensley tract, the property had been offered for sale to the public as commercial property. Evidence was presented that a large “for sale” sign had been placed on the property, that it had been listed with one or more realtors in Pell City for many months, and that it was well known in the community that the property was available for sale for commercial purposes. The Ensleys purchased the property subject to its being rezoned in order for them to build a shopping center on it. On September 24, 1984, the city council of Pell City rezoned the Ensley property from “residence” and “agriculture” to “general business.”
Because the evidence was presented to the court ore tenus, its findings of fact are presumed to be correct and they will not be disturbed on appeal unless plainly and palpably wrong and not supported by the evidence. Etheridge v. Yeager, 465 So.2d 378 (Ala.1985).
Appellants contend that in 1970 there was a common law dedication of the entire 25-acre tract as a public cemetery. The dedication of property as a public cemetery requires an intention to devote the property to the public at large over a continuous period of time. Garland v. Clark, 264 Ala. 402, 88 So.2d 367 (1956). Dedication may also be proven by use of the property as a cemetery for an extended period of time with the owner’s consent or acquiescence, and in Alabama 20 years is usually the required period. Garland v. Clark, supra.
In Magnolia Memorial Gardens, Inc. v. Denton, 317 So.2d 38 (Miss.1975), the Mississippi Supreme Court held that not all of the original 60 acres purchased by a cemetery corporation had been dedicated as a public cemetery. In the Magnolia case, even though plans were being made for further development of the cemetery and even though the land was assessed as a cemetery for two years and, therefore, not taxed, the court found no common law dedication, only an intent to use the land for burial purposes. The court also found that the cemetery corporation was engaged, among other things, in the business of selling burial lots in the part of its land that had been platted and set aside for cemetery purposes. These facts are very similar to those in the instant case. The Valley Hill cemetery corporation did not execute and *89 record a map of sectors “B” and “C,” as was done for sector “A.” Sector “A” was dedicated as a public cemetery in 1970, while sectors “B” and “C” were not proposed until 1978, when a surveyor prepared drawings. At approximately the same time, the cemetery corporation began to sell part of the original 25 acres for commercial purposes. Even though from 1970 ad valorem taxes were not assessed on the original 25 acres until portions of the land were sold to others, we hold that the evidence supports the trial court’s finding that there was no dedication of proposed sectors “B” and “C” as a public cemetery.
The appellants rely heavily upon the fact that the cemetery corporation made application to Pell City in 1970, pursuant to Alabama Code of 1940 (Recomp.1958), Title 22, § 88,[1] for a license to operate a cemetery, and that the application described the entire 25-acre tract. This code section (like its successor) required the city or county officials where a cemetery was located to comply with the health and sanitation laws of the State of Alabama before a license could be issued. We agree with the trial court that obtaining such a license does not constitute dedication of the entire tract for cemetery purposes.
Appellants also contend that the ap-pellees should be estopped to use, or to permit to be used, sectors “B” and “C” for a commercial shopping center because appellants purchased lots in sector “A” in reliance upon the belief that the entire tract would be a cemetery.
The elements of equitable estoppel are as follows:
“An estoppel ... has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with bis earlier conduct.”
Mazer v. Jackson Insurance Agency, 340 So.2d 770, 773 (Ala.1976).
We hold that estoppel does not apply in this case, because we find insufficient evidence to support the appellants’ assertion that they relied upon representations made by the cemetery corporation when they purchased lots in sector “A.” The evidence shows that sectors “B” and “C” were not proposed until 1978, yet sector “A” was proposed and dedicated as a cemetery in 1970. None of the deeds contained in the record mentions sectors “B” and “C,” only sector “A.” In fact, when other portions of the original 25 acres were sold, rezoned, and used for commercial purposes, the appellants did not object.
Appellants also assert that the conveyance to the Ensleys was in violation of Alabama Code (1975), §§ 11-47-60 and 11-47-71. These sections provide procedures to be followed for the abandonment and sale of cemeteries. Since we have found there was no dedication of sectors “B” and “C” as a cemetery, these provisions have no application to this case.
In addition to their argument that sectors “B” and “C” were dedicated as a cemetery, appellants argue that the action of the city council 'of Pell City in rezoning the Ensley tract from residence and agriculture to general business was arbitrary and capricious and in violation of their civil rights under 42 U.S.C.A. § 1983 (1981).
Appellants first argue that the city council failed to comply with the applicable law of the State of Alabama and the ordinances of the City of Pell City. After reviewing the record, we find that the city council complied with all the applicable laws and ordinances.
Appellants then argue that rezoning the property to general business is arbitrary and capricious and bears no substan *90 tial relationship to the health, safety, morals, or general welfare of the City of Pell City. The controlling rule of law in Alabama is the “fairly debatable” rule, which is stated as follows:
“If the adoption of the ordinance raises questions upon which reasonable differences may exist in view of all the circumstances, and the wisdom of the ordinance is fairly dabatable, then the action of a municipal governing body in adopting the ordinance will not be deemed arbitrary, a court being unwilling under such circumstances to substitute its judgment for that of the municipal governing body acting in a legislative capacity. ...”
Cale v. City of Bessemer, 393 So.2d 959, 961 (Ala.1980); see also Longshore v. City of Hoover, 454 So.2d 954 (Ala.1984).
The evidence showed that most of the property surrounding the Ensley tract, except for sector “A” and another older cemetery, was either zoned, or used, for commercial purposes; that there was a heavy flow of traffic along Highway 231 and Highway 34, both of which lie adjacent to the Ensley tract; and that if the property is zoned for commercial purposes, it would be put to its highest and best use. Appellants presented evidence that use of the land for commercial purposes is a high-density land use, and that such a use is unreasonable next to land used as a cemetery, which is a low-density land use.
We cannot say that the City of Pell City acted arbitrarily and capriciously in rezoning the subject property. There was ample evidence to support the trial court’s finding that the property was properly zoned for commercial use.
We reject appellants’ contention that Pell City violated their civil rights under 42 U.S.C.A. § 1983 (1981), by rezoning the property. Because the rezoning of the subject property was proper and was conducted in accordance with the applicable state law and municipal ordinances, the appellants have failed to prove a violation under 42 U.S.C.A. § 1983.
Based upon the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.

. Title 22, § 88, is now codified at Alabama Code (1975), § 22-20-4.